**In the United States District Court
for the District of Kansas**

―――――――――

Case No. 24-cv-04040-TC-TJJ

―――――――――

TC HULETT, JR.,

*Plaintiff*

v.

ADVENTHEALTH SHAWNEE MISSION, ET AL.,

*Defendants*

―――――――――

**MEMORANDUM AND ORDER**

TC Hulett, Jr., proceeding pro se, sued a hospital he visited, AdventHealth Shawnee Mission, and four of its employees for providing him unsatisfactory medical care in violation of his statutory and constitutional rights. Doc. 1. Defendants moved to dismiss. Docs. 16 & 18. For the following reasons, their motions are granted.

**I**

**A**

Each ground on which the defendants seek dismissal, one for improper service and one for the failure to state a plausible claim, has a different standard that governs its resolution. And Hulett's pleadings are subject to standards that apply only to pro se plaintiffs. The following describes each applicable standard.

**1.** The individual defendants assert that there is no personal jurisdiction over them because they were not properly served. Under Federal Rule of Civil Procedure 12(b)(5), a defendant may move to dismiss for insufficient service of process. When a defendant moves to dismiss under Rule 12(b)(5), the plaintiff has the burden "of establishing the validity of the service of process." *Federal Deposit Ins. Corp. v. Oaklawn Apartments*, 959 F.2d 170, 174 (10th Cir. 1992).

1

Before personal jurisdiction may be exercised over a defendant, the plaintiff must have served process validly under Rule 4. *Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987). Rule 4(e) sets forth the manners in which an individual defendant may be served. *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1210 (10th Cir. 2000). One way is to personally deliver a copy of the summons and the complaint to the individual, his or her agent, or a person of suitable age and discretion at the individual's residence. Fed. R. Civ. P. 4(e)(2)(A)–(C). The other is by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1).

District courts have broad discretion to determine the appropriate remedy when the plaintiff fails to effect proper service. 5B Wright & Miller, *Federal Practice & Procedure* § 1353 (4th ed. 2025). As a general rule, the appropriate remedy after the plaintiff's first attempt is to quash service rather than dismissing the plaintiff's claims. 5B Wright & Miller, *Federal Practice & Procedure* § 1353 (4th ed. 2025); *Gregory v. United States/U.S. Bankruptcy Ct. for Dist. of Colo.*, 942 F.2d 1498, 1500 (10th Cir. 1991). Other remedies include dismissing the case without prejudice or extending the time for service. *See Scott v. Hern*, 216 F.3d 897, 912 (10th Cir. 2000).

**2.** Defendants also move to dismiss Hulett's claims under Rule 12(b)(6). A federal district court may grant a motion to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

To survive a motion to dismiss for failure to state a claim, the complaint need only contain "a short and plain statement . . . showing that the pleader is entitled to relief" from each named defendant. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Two "working principles" underlie this standard. *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). First, a court ignores legal conclusions, labels, and any formulaic recitation of the elements. *Penn Gaming*, 656 F.3d at 1214. Second, a court accepts as true all remaining allegations and logical inferences and asks whether the claimant has alleged facts that make his or her claim plausible. *Id.*

A claim need not be probable to be considered plausible. *Iqbal*, 556 U.S. at 678. But the facts, viewed in the light most favorable to the claimant, must move the claim from conceivable to plausible. *Id.* at

678–80. The "mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

Plausibility is context specific. The requisite showing depends on the claims alleged, and the inquiry usually starts with determining what the plaintiff must prove at trial. *See Comcast Corp. v. Nat'l Assoc. of African Am.-Owned Media*, 589 U.S. 327, 332 (2020). In other words, the nature and complexity of the claim(s) define what plaintiffs must plead. *Cf. Robbins v. Oklahoma*, 519 F.3d 1242, 1248–49 (10th Cir. 2008) (comparing the factual allegations required to show a plausible personal injury claim versus a plausible constitutional violation).

**3.** These rules do not operate in a vacuum. When a plaintiff, such as Hulett, proceeds pro se, a court must construe his or her pleadings generously. *See Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009). That generosity means a court should overlook the failure to properly cite legal authority, confusion of various legal theories, and apparent unfamiliarity with pleading requirements. *Id.* But it does not permit a court to construct legal theories on the plaintiff's behalf or assume facts not plead. *See id.*; *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

**B**

In May 2022, Plaintiff TC Hulett, Jr. sought emergency medical care at AdventHealth Shawnee Mission. Doc. 1 at 10.[1] Hulett spent all day walking to the hospital to receive treatment for injuries to his head, spine, and neck. *Id.* When he arrived, he felt "weak, dizzy, and dehydrated." *Id.* at 7. Hulett asked for water, but a nurse informed him that they could only hydrate him through an IV. *Id.* at 11. One of AdventHealth's providers, Travis Thibault, attempted to insert the IV. *Id.* Thibault made seven attempts without changing the needle before additional employees came to assist. *Id.* Hulett states that he was bleeding everywhere while this happened. *Id.*

---

[1] All references to the parties' briefs are to the page numbers assigned by CM/ECF.

Hulett hoped for different or additional treatment than what he received. Doc. 1 at 8. In particular, he wanted to be transferred to a different hospital or to a different part of the facilities at AdventHealth. *Id.* It is unclear from the Complaint what led to AdventHealth employees asking Hulett to leave, but at some point, they asked him to leave even though he wanted to stay. *Id.* at 10. Hulett alleges that AdventHealth employees attacked him and threatened to use force or call the police if he refused to leave. *Id.* at 10–11. The employees did not provide Hulett documentation from his visit, but they told him he could find his records online. *Id.* at 11. Hulett took a photo of the summary of his visit and attached it to his Complaint. *Id.*; Doc. 1-2.

The summary of Hulett's visit states that he left "against medical advice." Doc. 1-2 at 1. It also indicates that labs and imaging were ordered for Hulett but does not specify whether they were ultimately performed. *Id.*

Hulett alleges that these events caused him serious distress. Doc. 1 at 10. He claims to have had an anxiety attack at the time of the events, and he continues to have such attacks when he thinks about the experience. *Id.* Hulett felt he was treated "worse than a dog" and "thrown out like trash." *Id.*

Based on these events, Hulett brings several claims against AdventHealth and four AdventHealth employees. Doc. 1. The four individual defendants are Travis Thibault, who is an Advance Practice Registered Nurse, and three Registered Nurses, Ashley Hurt, Lauren Stillwell, and Geralin Camara Dela Cruz. *Id.*

Hulett's claims are varied.[2] First, he asserts an equal protection claim against the five defendants by way of 42 U.S.C. § 1983. Doc. 1 at 10. Second, he alleges that the defendants violated the Emergency Medical Treatment and Labor Act, 42 U.S.C. § 1395dd. *Id.* at 3. And construing Hulett's complaint generously, he brings five additional claims, also against all five defendants. He references Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, *et seq.*, a statute prohibiting

---

[2] This is not Hulett's first attempt to sue medical facilities based on his interactions with them. *See Hulett v. Olathe Med Ctr.*, No. 24-3196, 2025 WL 2423938 (10th Cir. 2025) (affirming dismissal of Hulett's complaint where he alleged that a hospital and three individuals denied him emergency medical care and stabilizing treatment); Complaint, *Hulett v. Foster*, No. 24-2387 (D. Kan. Aug. 22, 2024), ECF No. 1.

discrimination in programs and activities that receive federal financial assistance. Doc. 1 at 8. He also relies on two criminal statutes: 18 U.S.C. § 2071, *id.* at 11, which prohibits the concealment or destruction of government documents, and 18 U.S.C. § 241, *id.* at 3, which criminalizes conspiracies to deprive individuals of their federally protected rights. Next he invokes Article 14 of the Convention on the Rights of Persons with Disabilities. *Id.* at 12. And finally, he makes allegations of fraud and misrepresentation that could be construed as a common-law or statutory fraud claim. *Id.* at 8.

Hulett makes several allegations regarding the medical care he received at AdventHealth. In particular, Hulett alleges that AdventHealth and its employees provided him with inadequate care and monitoring, failed to protect him from neglect, exposed him to an unsafe and unsterile medical environment, and failed to comply with federal laws. Doc. 1 at 7–11. He also alleges that they denied him proper treatment because of his race, color, and disability. *Id.* at 7. Each of the defendants moved to dismiss. Docs. 16 & 18. The individual defendants argue that Hulett failed to properly serve them, and all defendants argue that the Complaint should be dismissed because Hulett failed to state a claim under Section 1983 and the Emergency Medical Treatment and Labor Act. Doc. 17 at 1–15; Doc. 19 at 1–8.

## II

Hulett's attempt to serve the four individual defendants at their business address was improper under Kansas law. But even if service had been proper, Hulett did not plausibly allege any claim for relief against any of the defendants because he did not allege facts sufficient to support the essential elements of his claims. As a result, the defendants' motions to dismiss are granted.

### A

The four individual defendants contend Hulett's claims against them should be dismissed because Hulett's attempt to serve them at their place of employment was improper. Doc. 17 at 12–14; Doc. 19 at 6–7. The record confirms the individual defendants' position. *See Albers v. Board of Cnty. Comm'rs of Jefferson Cnty., Colo.*, 771 F.3d 697, 702 n.6 (10th Cir. 2014) (explaining that a defendant does not waive an insufficient-service defense by asserting it in a motion to dismiss before filing a responsive pleading).

5

In Kansas, an individual may be served at his or her place of business if and only if two threshold requirements are met. Kan. Stat. Ann. § 60-304(a); *Fisher v. DeCarvalho*, 314 P.3d 214, 218 (Kan. 2013). First, service must be attempted at the individual's dwelling or usual place of abode. Kan. Stat. Ann. § 60-304(a). Second, the plaintiff must file a return of service stating that residential service was refused or unclaimed and that there is a known business address where the individual may be served. *Id.*

The requirements for business-address service have not been met. There is no indication or argument that Hulett attempted service at any of the individual defendants' residences or that he filed anything establishing that the residential service was refused or unclaimed. That constitutes a failure of service. *Fisher*, 314 P.3d at 218 (noting that a filing indicating that service was refused or unclaimed is one of the essential requirements of the statute).

Hulett's response does not change this conclusion. He makes no argument that he complied with Section 60-304(a). Instead, he states that he provided a copy of the Complaint and the summons within the time permitted by law. Doc. 25 at 4. Hulett's argument, construed generally, appears to assert that he substantially complied with Section 60-304(a) even though he did not attempt to serve the defendants at their homes before sending a copy of the Complaint and the summons to AdventHealth. True, a plaintiff may properly effectuate service under Kansas law even where he or she does not strictly comply with each statutory requirement so long as the plaintiff substantially complies, which means the plaintiff was compliant "in respect to the essential matters necessary to assure every reasonable objective of the statute." *Fisher*, 314 P.3d at 219 (quoting *Myers v. Board of Cnty. Comm'rs of Jackson Cnty.*, 127 P.3d 319, 324 (Kan. 2006)). But substantial compliance does not authorize "a new, judicially-created method of serving notice beyond the methods established by the legislature." *Myers*, 127 P.3d at 324.

Hulett's efforts do not amount to substantial compliance with Section 60-304(a). Hulett does not attempt to address his failure to comply with the essential elements of the statute requiring a plaintiff to attempt service at a defendant's home and to file a document noting that attempt. Those requirements reflect the legislature's judgment that business-address service is proper only after a failed attempt to serve a defendant at his or her home. *See Fisher*, 314 P.3d at 218–20 (finding a plaintiff did not substantially comply with Section 60-304(a) because

6

the plaintiff did not satisfy the essential elements of the statute); *see also McIntyre v. Rumsey*, 80 P.3d 1201 (Kan. Ct. App. 2003) (noting that the Kansas legislature intended for a plaintiff to attempt serving a defendant at his or her home address before serving the defendant at his or her place of business). Accordingly, Hulett's attempt to serve the individual defendants at their place of business is improper. *Burnham v. Humphrey Hosp. Reit Tr., Inc.*, 403 F.3d 709, 716 (10th Cir. 2005) (finding that a plaintiff failed to substantially comply with the methods of serving process under Kansas law where the plaintiff's delivery only included one of the documents required by the statute).

Hulett's failure justifies dismissal of his claim. In some circumstances, a court might consider granting leave to a afford a litigant an opportunity to effectuate proper service. *Gregory v. United States/U.S. Bankruptcy Ct. for Dist. of Colo.*, 942 F.2d 1498, 1500 (10th Cir. 1991) (quoting *Pell v. Azar Nut Co.,* 711 F.2d 949, 950 n. 2 (10th Cir.1983)); *see also Fisher v. Lynch*, 531 F. Supp. 2d 1253, 1269 (D. Kan. 2008) ("Generally, when the [c]ourt finds that service is insufficient but curable, it should quash service and give plaintiff an opportunity to re-serve defendant.").That option is not available, however, when it would be futile. *See Gregory*, 942 F.2d at 1500. In this case, permitting such an opportunity would be futile because, as explained below, Hulett failed to state a claim upon which relief may be granted. *Id.* (finding that allowing time for the plaintiff to effectuate proper service of process would be futile where the complaint was subject to dismissal under Rule 12(b)(6)); *accord Ngiendo v. Social Sec. Admin.*, 547 F. App'x 913, 914 (10th Cir. 2013).

**B**

All defendants also seek dismissal for failure to state a claim. Doc. 17 at 3–12; Doc. 19 at 3–5. That contention, too, is well taken.

**1.** Invoking 42 U.S.C. § 1983, Hulett asserts that all defendants violated his Fourteenth Amendment right to equal protection. Doc. 1 at 12. Section 1983 provides that "[e]very person who, under color of [state law,] subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. It creates no substantive rights but merely provides a mechanism for enforcing a right conferred by the Constitution or a federal statute. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002); *see also Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166, 174–75 (2023).

A Section 1983 complaint must contain "allegations sufficient to establish action by [d]efendants under color of state law." *See Barnett v. Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C.*, 956 F.3d 1228, 1235 (10th Cir. 2020). In other words, Section 1983 generally "excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Id.* (quoting *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999)). Private actors may only be held liable under Section 1983 if "'the conduct allegedly causing the deprivation of a federal right' [is] 'fairly attributable to the State.'" *Wasatch Equal. v. Alta Ski Lifts Co.*, 820 F.3d 381, 387 (10th Cir. 2016) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)).

Hulett fails to allege that any of the defendants were acting under color of state law when they interacted with him or participated in his treatment at AdventHealth. In particular, his Complaint contains no allegations suggesting that AdventHealth is a public hospital or that its employees are state actors. *See Barnett*, 956 F.3d at 1235. And to the extent Hulett alleges that AdventHealth or its employees acted under color of state law because AdventHealth receives federal funding, *see* Doc. 1 at 7–9, his allegations are insufficient to state a claim. None of the facts Hulett has alleged could support an inference that the defendants' conduct "results from the State's exercise of coercive power" through its provision of funding. *See Wittner v. Banner Health*, 720 F.3d 770, 775 (10th Cir. 2013) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1006 (1982)) (finding that a private medical facility was not acting under color of state law because the state regulated it but did not mandate its employees to make certain decisions regarding patient care); *Pino v. Higgs*, 75 F.3d 1461, 1466–67 (10th Cir. 1996) (same). As a result, Hulett has failed to plausibly allege a Section 1983 claim against any of the Defendants.

**2.** Defendants also argue that Hulett failed to plausibly allege a violation of the Emergency Medical Treatment and Labor Act, 42 U.S.C. § 1395dd. Doc. 17 at 7–9; Doc. 19 at 4–5. EMTALA is designed to "ensure all patients, regardless of their perceived ability or inability to pay for medical care, are given consistent attention." *Koel v. Citizens Med. Ctr., Inc.*, 128 F.4th 1329, 1334 (10th Cir. 2025) (quoting *Phillips v. Hillcrest Med. Ctr.*, 244 F.3d 790, 796 (10th Cir. 2001)).

EMTALA imposes two requirements on hospitals that receive Medicare payments and operate an emergency room. *Koel*, 128 F.4th at 1334. The first is that "if an individual arrives at the emergency room and requests treatment, the hospital must 'provide for an appropriate

8

medical screening examination . . . to determine whether or not an emergency medical condition . . . exists.'" *Id.* (quoting *Urban v. King*, 43 F.3d 523, 525 (10th Cir. 1994)); 42 U.S.C. § 1395dd(a). The second is that "if the examination reveals the patient is suffering from an emergency medical condition, the hospital usually must stabilize the patient before getting into the business of trying to transfer him elsewhere." *Koel*, 128 F.4th at 1334 (quoting *Genova v. Banner Health*, 734 F.3d 1095, 1097 (10th Cir. 2013)); 42 U.S.C. § 1395dd(b).

Hulett's claim has a variety of failings. For one, he attempts to impose liability on the individual defendants. But EMTALA only provides a private right of action against hospitals—not individual employees. *Delaney v. Cade*, 986 F.2d 387, 393 (10th Cir. 1993). As a result, Hulett's claim—to the extent he asserts it against the individual defendants—fails as a matter of law.

For another, Hulett has not plausibly alleged that AdventHealth failed to perform an appropriate medical screening examination. The purpose of the screening is only to determine if an emergency medical condition exists. *Phillips v. Hillcrest Med. Ctr.*, 244 F.3d 790, 796–97 (10th Cir. 2001). In contrast, EMTALA does not "set a federal standard of care or replace pre-existing state medical negligence laws." *Id.* at 798. Nor does it "provide a remedy for an inadequate or inaccurate diagnosis." *Id.* The relevant inquiry for the screening requirement is not whether a screening is adequate; it is "whether the hospital adhered to its own procedures." *Koel*, 128 F.4th at 1334–35 (emphasis omitted).

The allegations in the Complaint do not permit a reasonable inference that AdventHealth declined to conduct a screening. Instead, Hulett appears to complain that the hospital's treatment of him fell below an accepted standard of care. Doc. 1 at 7 (alleging that AdventHealth "do[es] not make sure every patient receives the best treatment possible, that it engages in "[i]nadequate monitoring," and that he received "[s]ub-par standards of care"). A litigant focusing on allegations of negligence and/or medical malpractice fails to state a claim. *Koel*, 128 F.4th at 1334–35; *see also Ward v. Lutheran Med. Ctr.*, 769 F. App'x 595, 599 (10th Cir. 2019) (affirming the dismissal of a claim under EMTALA to the extent that it was based on allegations of negligence and medical malpractice).

Nor does Hulett plausibly allege that AdventHealth departed from its own screening standards when it treated him. *Koel*, 128 F.4th at 1336 (emphasizing that EMTALA violations depend on "whether a hospital

9

adhered to its own standard procedures"). Rather, he appears to argue that AdventHealth's emergency screening policies themselves violate the EMTALA's requirements by stating that the hospital's "emergency situation plan is defective and caused [him] to suffer." Doc. 1 at 10. Accepting that allegation as sufficient would contradict the substantial deference given "to the existing screening procedures utilized by the hospital, because it, not a reviewing court, is in a superior position to determine its own capabilities and limitations." *Koel*, 128 F.4th at 1334–35.

Hulett's allegations of differential treatment do not change this result. For example, Hulett alleges that AdventHealth "has a separate and unequal system of outpatient clinics, sorting patients based on payer source and resulting in disparate treatment of patients based on race and national origin." Doc. 1 at 8. EMTALA requires a hospital "to apply uniform screening procedures to all individuals coming to the emergency room." *Phillips*, 244 F.3d at 797. But Hulett has not made any factual allegations supporting a reasonable inference that AdventHealth treats patients differently because of their insurance status, race, or national origin. His allegations concern only his own experience at AdventHealth and conclusory allegations that AdventHealth failed to uniformly treat patients in similar medical circumstances. That is legally insufficient to state a plausible claim. *See Pyle v. Woods*, 874 F.3d 1257, 1266 (10th Cir. 2017) (finding that generic allegations reciting the elements of a cause of action are insufficient to state a claim for relief); *Repp v. Anadarko Mun. Hosp.*, 43 F.3d 519, 522 (10th Cir. 1994) (explaining that a plaintiff must ultimately prove that the he or she was treated differently than other patients to show an EMTALA violation).

Hulett has also failed to plausibly allege that AdventHealth violated EMTALA's requirement that it stabilize emergency conditions before transferring patients. The law requires hospitals to stabilize a patient's medical condition after "the hospital determines that the individual has an emergency medical condition." 42 U.S.C. § 1395dd(b)(1). A hospital only violates this stabilization requirement if it has "actual knowledge of the individual's unstabilized emergency medical condition." *Koel*, 128 F.4th at 1336. And EMTALA defines stability differently than that term may be defined in a medical setting. *St. Anthony Hosp. v. U.S. Dep't of Health & Human Servs.*, 309 F.3d 680, 694 (10th Cir. 2002). Specifically, in this context, stabilizing treatment is "such medical treatment of the condition as may be necessary to assure, within reasonable

medical probability, that no material deterioration of the condition is likely to result from or occur during the transfer of the individual from a facility." *Id.* (quoting 42 U.S.C. § 1395dd(e)(3)(A)).

The allegations Hulett makes do not plausibly state a claim that AdventHealth failed to stabilize an emergency medical condition he exhibited. The Complaint, along with the discharge summary that Hulett referenced in the Complaint and attached to it, state that AdventHealth employees attempted to hydrate Hulett through IV treatment, gave him a wheelchair, and ordered labs and imaging for Hulett. Doc. 1 at 11; Doc. 1-2 at 1; *See Truman v. Orem City*, 1 F.4th 1227, 1237 n.7 (10th Cir. 2021) (noting that documents attached to the Complaint and incorporated by reference may be considered at the 12(b)(6) stage). The discharge summary then states that Hulett "left against medical advice." Doc. 1-2 at 1. There is no allegation that the hospital found that Hulett had an emergency medical condition before he did so. Doc. 1-2 at 1; *Koel*, 128 F.4th at 1336–37 (finding that EMTALA's provision requiring stabilization before transfer did not apply because the hospital did not have actual knowledge of any specific emergency condition even though it knew he had a possible medical condition).

Finally, EMTALA does not require a hospital to make a specific transfer. *Contra* Doc. 1 at 8. Instead, it merely requires that emergency medical conditions be stabilized before any transfer occurs. *See* 42 U.S.C. § 1395dd(b)(1). Hulett's arguments only focus on AdventHealth's failure to transfer him to another facility or to a different part of AdventHealth's facilities. Doc. 1 at 8. Because he has not alleged that any transfer occurred, Hulett has not stated a claim that AdventHealth violated the Act's requirement to stabilize any emergency medical conditions before initiating a transfer. *See Phillips*, 244 F.3d at 798 (explaining that EMTALA does not set a federal standard of care for hospitals); *Koel*, 128 F.4th at 1335 (explaining that EMTALA does not provide a remedy for inadequate or inaccurate decisions).

**3.** Hulett's other claims are not viable either. Not only do the constitutional and statutory claims fail to state a claim, none of the other sources that Hulett's Complaint referenced contains a private right of action under which an individual may bring a claim. For example, he claims that the defendants violated Title VI of the Civil Rights Act of 1964, two criminal statutes, the Convention on the Rights of Persons with Disabilities, and that they made fraudulent statements or misrepresentations. Doc. 1 at 3, 8, 10, 12. Those are not appropriate avenues for the relief Hulett seeks. *Alexander v. Sandoval*, 532 U.S. 275, 293

(2001) (holding that there is no private right of action under Title VI); *Andrews v. Heaton*, 483 F.3d 1070, 1076 (10th Cir. 2007) (explaining that claims alleging violations of federal criminal statutes that do not provide for a private right of action are not enforceable through civil litigation); *Thunderhorse v. Collier*, No. 22-1511, 2024 WL 1056024, at *7 (S.D. Tex. Mar. 11, 2024) (collecting cases explaining that the Convention on the Rights of Persons with Disabilities does not create a private right of action). Moreover, if Hulett's allegation that the defendants committed fraud and/or misrepresentation is an attempt to bring a common-law or statutory claim, his conclusory allegation that the defendants engaged in fraud and misrepresentation is insufficient. Fed. R. Civ. P. 9(b) (requiring a complaint to state with particularity the circumstances constituting fraud); *United States ex rel. Sorenson v. Wadsworth Bros. Constr. Co.*, 48 F.4th 1146, 1156 (10th Cir. 2022) (finding allegations of fraud insufficient where they did not specifically state who engaged in fraudulent activity and what the allegedly false representations were). Put simply, none of these phrases are allegations of fact that, assuming they are true, plausibly state a claim. *See Firstenberg v. City of Santa Fe*, 696 F.3d 1018, 1024 (10th Cir. 2012) (explaining that a pro se plaintiff's complaint cannot be rewritten "to include claims that were never presented" even though pro se litigants' pleadings are construed liberally); *Andrews*, 483 F.3d at 1076 (affirming the dismissal of a pro se plaintiff's complaint where the claims asserted did not provide a private cause of action or they were fraud claims that were not alleged with specificity).

### III

For the foregoing reasons, Defendants' Motions to Dismiss, Docs. 16 & 18, are GRANTED.

It is so ordered.

Date: August 29, 2025       s/ Toby Crouse
                            Toby Crouse
                            United States District Judge